Rayfield CARRIER, Plaintiff–Appellant,

v.

Louis SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellee.

No. 91–4136
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 11, 1991.

Richard J. Clarkson, Chris Quinn, Reaud, Morgan & Quinn, Beaumont, Tex., for plaintiff-appellant.

Bob Wortham, U.S. Atty., Steven M. Mason, Asst. U.S. Atty., Tyler, Tex., Joseph B. Liken, Dallas, Tex., Karen J. Sharp, Office of the General Counsel, Social Sec. Admin., Dept. of Health and Human Services, Baltimore, Md., for defendant-appellee.

Before REYNALDO G. GARZA, POLITZ and DUHÉ, Circuit Judges.

PER CURIAM:

Rayfield Carrier challenges a decision by the Secretary of Health and Human Services to deny his claim for social security disability and supplemental security income benefits. We find substantial evidence in support of the Secretary's decision and affirm.

## PROCEDURAL HISTORY.

Plaintiff–Appellant ("plaintiff" or "Carrier") applied to the Secretary of the Department of Health and Human Services ("Secretary" or "defendant") for disability benefits on February 3, 1984, alleging that pain, muscle weakness and lack of motor control prevented him from engaging in gainful employment since January of 1983. This application was denied at the first two levels of administrative review. Upon plaintiff's request, an administrative law judge ("ALJ") conducted a hearing and issued a decision denying benefits on April 22, 1985. The Appeals Council denied plaintiff's request for review.

On August 27, 1985, plaintiff filed a complaint in the District Court. The District Court granted defendant's motion for summary judgment. Plaintiff appealed to this Court, which dismissed the appeal for lack of a separate judgment on October 7, 1989. Upon plaintiff's motion, the District Court entered a separate judgment for the Secretary on February 8, 1991. Plaintiff now appeals the adverse judgment to this Court.

## FACTS.

Plaintiff applied for benefits in February, 1984, when he was forty-three years of age. He claimed that he had worked as a roofer until early 1983, when he began to suffer from pain and spasms due to a pinched nerve in his neck. He further testified that he could not stand for more than five minutes without suffering from lower back pain. His wife and another witness corroborated his testimony.

In February, 1984, plaintiff was hospitalized for myelopathy and had a spinal fusion performed at three levels. His discharge summary indicated that his leg strength and sensation improved, while his spasms had decreased. The prognosis was "fair to good." By August of 1984, plaintiff's physician noted that plaintiff was "getting better" and had improved strength, but that his gait remained spastic and the prognosis for recovery was not good. Plaintiff took medication for blood pressure and fluid retention, but was not under medication for pain.

At the request of the Social Security Administration, M.Y.I. Beck, M.D., examined plaintiff in October, 1984, and reported that the operation had apparently stopped the progression of plaintiff's myelopathy. He indicated that plaintiff was alert and oriented and that he found no evidence of muscle atrophy, but that Carrier continued to suffer from myelopathy, clonus and weakness on his left side.

A State Agency physician reviewed all of this evidence in November, 1984, and concluded that plaintiff did not have an impairment or combination of impairments which would meet or equal an Appendix 1 listing.[1] The physician determined moreover that plaintiff's condition would continue to improve and that within 12 months he would be able to perform jobs which required a medium level of exertion, and would be

---

1. Appendix 1 impairments are specific maladies which automatically entitle claimants, who are not gainfully employed, to benefits. *See* 20 C.F.R. Part 404, Subp. P, App. 1, § 1.05(C).

able to return to his former occupation as a roofer.

Notwithstanding the findings of the State Agency physician, the ALJ determined that plaintiff could not perform medium-level jobs and would not be able to return to his former occupation, but that he would be able to perform light-level jobs available in the national economy. He therefore found plaintiff not disabled in his April, 1985 decision. The District Court held that no basis existed for overturning the ALJ's decision.

Plaintiff filed another application and was found to be disabled by the Social Security Administration in a notice dated March 4, 1989. Plaintiff received an award of benefits retroactive to April 23, 1985, the day after the ALJ's decision in our case. Defendant noted that administrative regulations would not allow it to find disability onset prior to that date. At issue in this case are retroactive payments for claimed disability prior to April 23, 1985.

## ANALYSIS.

### I. The ALJ Properly Developed the Record.

 Plaintiff, who has a fifth grade education and was not represented by counsel at the hearing, claims that the ALJ failed to fulfill his "special duty" to develop the record "when an unrepresented claimant unfamiliar with the hearing procedures appears before him." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir.1984) (citations omitted). In *Kane*, we remanded a negative determination to the Secretary because

> [t]he record disclose[d] no question by the ALJ concerning whether or not Kane desired counsel. The hearing lasted five minutes and its transcript consist[ed] of four pages.... The ALJ asked only one perfunctory question about Kane's subjective complaints.

*Id.* at 1218.

In *James v. Bowen*, 793 F.2d 702 (5th Cir.1986), however, we held that the hearing before the ALJ was adequate and was distinguishable from that in *Kane* because it lasted for ten minutes and the ALJ questioned the applicant extensively about his condition. The hearing in the case at bar lasted for 26 minutes and yielded 16 pages of testimony. The ALJ reminded plaintiff that he could be represented by counsel if he so desired. The ALJ questioned plaintiff extensively about his condition, treatment which he had received and what he had been told about his condition by his physicians. He also questioned plaintiff about medication that he was taking as well as his daily routines and how his illness had affected them. Moreover, he took testimony from plaintiff's wife and a friend of plaintiff's. If the hearing in *James* sufficed, the hearing in this case certainly did. Therefore, we find no merit in plaintiff's allegation that the ALJ failed to adequately develop the record.

### II. The Secretary's Decision is Supported by Substantial Evidence and is in Accord with Relevant Legal Standards.

Judicial review of the Secretary's final decision of not disabled is limited under 42 U.S.C. § 405(g) to two inquiries: (1) whether substantial evidence of record supports the Secretary's decision, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir.1990). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kane v. Heckler*, 731 F.2d at 1219 (*citing Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).

The legal standard for determining disability under Titles II and XVI of the Social Security Act is whether the claimant is unable to perform substantial gainful activity for at least twelve consecutive months because of a medically determinable impairment. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In determining whether or not a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)–(f) (as paraphrased in *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir.1991)):

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

The ALJ found plaintiff not disabled at step five, and found that, while Carrier could no longer perform his past work, that there was light work in the economy which he would be able to perform. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

### A. Substantial Evidence Supports the Secretary's Decision that Plaintiff did not Suffer from an Appendix 1 Impairment.

Plaintiff contends that substantial evidence does not support the ALJ's determination that Carrier did not suffer from an Appendix 1 impairment which would have mandated a finding of disability at step three of the five-step procedure. This would have required a finding that he had a vertebrogenic disorder which produced or was expected to produce the following symptoms for twelve consecutive months:

1. Pain, muscle spasm, and significant limitation of motion in the spine; and

2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

20 C.F.R. Part 404, Subp. P, App. 1, § 1.05(C).

[2, 3] This court has found that "an ALJ may properly rely on a non-examining physician's assessment when ... those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician." *Villa v. Sullivan,* 895 F.2d at 1024. Nothing in the reviewing physician's report conflicts with the findings of Dr. Beck, defendant's designated examining physician. The Court notes that the reviewing physician's prognosis for recovery seems more optimistic than that of plaintiff's treating physician, who stated merely that Carrier was "getting better." In stating that plaintiff's prognosis was not good, however, the treating physician may well have been speaking of the possibility of full recovery. *See Moore v. Sullivan,* 919 F.2d 901, 905 (5th Cir.1990) (ALJ's decision of "not disabled" supported by substantial evidence because, *inter alia,* the treating physician's opinion that claimant was unable to work did not explain whether this referred to claimant's previous work or to work in general). The ALJ did not adopt the reviewing physician's determination that plaintiff would recover to the point that he would be able to perform medium-level work and to return to his former occupation as a roofer. Therefore, to the extent that the reviewing physician's determination may have contradicted the prognosis of plaintiff's physician, the ALJ did not adopt it. That much of the reviewing physician's determination that the ALJ did adopt does not contradict the findings of any examining physician and provides substantial evidence for the ALJ's determination that plaintiff did not suffer from an Appendix 1 impairment.

### B. The ALJ did not Give Insufficient Weight to Plaintiff's Subjective Complaints of Pain.

[4] Plaintiff contends that the ALJ gave insufficient weight to plaintiff's subjective complaints of pain. We do not agree. The record contains no indication that plaintiff ever complained of pain to any of his examining physicians. Nor did

he take medication for pain.[2] Nevertheless, the ALJ did credit Carrier's assertion that he suffered discomfort. The ALJ found that "[t]he claimant undoubtedly experiences some pain, but the evidence fails to establish that it is of such severity and duration as to interfere with his ability to perform basic work-related activities of a light and sedentary nature."

 It is, of course, improper for an ALJ not to consider a claimant's subjective complaints of pain. It is also improper for an ALJ to make no finding as to a claimant's subjective complaints of pain if, if the claimant were believed, said claimant would be entitled to benefits. *See Scharlow v. Schweiker*, 655 F.2d 645 (5th Cir. 1981) (negative determination reversed and remanded because ALJ made no findings as to claimant's subjective complaints of pain). This, however, is not such a case. The ALJ made a finding as to plaintiff's subjective complaints and in fact credited them, but not to the extent that plaintiff wished. "How much pain is disabling is a question for the ALJ since the ALJ has primary responsibility for resolving conflicts in the evidence." *Id.* at 648. We may not reweigh the evidence. *Villa v. Sullivan*, 895 F.2d at 1022 (citations omitted).

 Finally, the Court notes that it appears that plaintiff never did recover sufficiently to rejoin the work force and was later found to be disabled. Of course, the Secretary cannot rely upon a physician's prognosis of recovery if such prognosis has already proven to be incorrect by the time that the Secretary issues a final decision. *See Taylor v. Bowen*, 782 F.2d 1294 (5th Cir.1986). This, however, is not such a case. We are constrained by the record which was available to the ALJ. We cannot compare the ALJ's foresight with our own hindsight.

## CONCLUSIONS.

Much as we sympathize with plaintiff, we cannot agree that the ALJ failed either to compile a sufficient record or to back up his reasoning with substantial evidence. Therefore, the District Court's summary judgment in favor of the Secretary is AFFIRMED.

---

**2.** We have recently found, in a case involving the termination of benefits to a plaintiff whom the Secretary determined to be no longer disabled, that the decision to forego medication for pain is, in conjuntion with medical reports, a relevant factor which may be considered by the ALJ. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir.1991) (per curiam).